**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Barten, | No. CV-23-00267-TUC-CKJ (MSA) |
|        Plaintiff, | **ORDER** |
| v. | |
| State Farm Mutual Automobile Insurance Company, | |
|        Defendant. | |

Pending before the Court is Plaintiff Bryan Barten's motion to compel discovery. (Doc. 58.) The motion has been fully briefed. (Docs. 64, 72.) Oral argument was requested but is not deemed necessary. For the following reasons, the motion will be granted in part.

### Background[1]

In April 1995, Plaintiff was rendered a quadriplegic as a result of an automobile accident. (Doc. 1 ¶ 6.) At the time, he was covered under an insurance policy issued by Defendant State Farm Mutual Automobile Insurance Company. (*Id.* ¶ 7.) The policy requires that Defendant pay all reasonable charges for reasonably necessary products and services for Plaintiff's care, recovery, or rehabilitation. (*Id.* ¶ 8.)

Since the accident, Plaintiff has had various needs arising from his injuries, including the need for attendant care, physical therapy, and medically necessary assistive devices. (*Id.* ¶ 10.) However, in the past, Defendant refused to pay certain benefits, denied benefits, and made misrepresentations to Plaintiff about the benefits he was owed. (*Id.*

---

[1]     These factual allegations are taken from the complaint. (Doc. 1.)

¶ 11.) As a result, in 2012, Plaintiff filed suit against Defendant for breach of contract and insurance bad faith. (*Id.*) That lawsuit eventually settled. (*Id.* ¶ 12.)

Since then, Defendant has reverted to its old bad-faith ways. (*Id.*) For example, although Defendant has enough information in its file to pay Plaintiff's claims for attendant care and equipment, Defendant has ignored that information, made Plaintiff jump through needless hoops, asked for repetitive information, and grossly underpaid the benefit. (*Id.*) Defendant has also ignored many of Plaintiff's phone calls and emails. (*Id.* ¶ 13.) In addition, Defendant has required information beyond reasonable proof of loss before reimbursing Plaintiff for his out-of-pocket expenses and failed to provide adequate explanations for its coverage decisions. (*Id.* ¶ 14.) As a result, Plaintiff filed this second lawsuit, alleging a single claim of insurance bad faith. (*Id.* ¶¶ 17–20.)

### Legal Standard

A party may obtain discovery as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency" to prove or disprove a fact "of consequence in determining the action." Fed. R. Evid. 401. In determining whether information sought by a party is proportional to the needs of the case, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### Discussion

Plaintiff argues that Defendant failed to adequately respond to 14 requests for production (RFP). *See* Fed. R. Civ. P. 34(a) (authorizing parties to serve requests to produce designated documents, electronically stored information, or other tangible things). Defendant objects to the RFPs on numerous grounds. Below, the Court (I) rules on Defendant's objections generally. The Court then (II) applies those rulings to each individual RFP.

## I.     Defendant's Objections

### A.     Relevancy

The RFPs seek two categories of information. The first concerns information about Defendant's handling of Plaintiff's claim (e.g., the requests seek Plaintiff's claim file, documents outside the claim file that concern Plaintiff, and communications about Plaintiff sent to or between Defendant's employees). These RFPs seek relevant information. Plaintiff alleges that Defendant handled his claim in bad faith. Plainly, any information Defendant has regarding its handling of the claim will tend to prove or disprove Plaintiff's allegation. This is true regardless of whether the information is within or outside the claim file. *See Sell v. Country Life Ins.*, 189 F. Supp. 3d 925, 932–33 (D. Ariz. 2016) (explaining that emails outside the claim file were relevant to the plaintiff's bad-faith claim); *see also Comput. Sci. Corp. v. Endurance Risk Sols. Assurance Co.*, No. 20-cv-01580, 2022 WL 1192782, at *2 (S.D.N.Y. Mar. 10, 2022) (rejecting the insurer's argument that "a search for emails outside of . . . [the] claims file [was] 'unnecessary and burdensome'" and holding that "all documents, wherever maintained, regarding [the insurer's] handling of Plaintiff's claim [were] clearly relevant to [the] Breach of Contract claim").

The second category concerns information about financial incentives that Defendant might offer to employees who deny more claims (e.g., the requests seek Defendant's economic performance measures, combined ratio goals, and severity goals). These RFPs also seek relevant information. If Defendant offers financial benefits to adjustors who deny more claims, then those incentives could have led to the wrongful denial of Plaintiff's claim. *See Ingram v. Great Am. Ins.*, 112 F. Supp. 3d 934, 940 (D. Ariz. 2015) ("Evidence regarding whether [the insurers] 'set arbitrary goals for the reduction of claims paid' and whether '[t]he salaries and bonuses paid to claims representatives were influenced by how much the representatives paid out on claims' is relevant to whether Defendants acted unreasonably and knew it." (second alteration in original) (quoting *Zilisch v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 280 (Ariz. 2000))); *Suljanovic v. State Farm Mut. Auto. Ins.*, No. 20-CV-534, 2021 WL 634143, at *3 (E.D. Mo. Feb. 18, 2021) (collecting cases

holding that information about financial incentives is relevant and discoverable).

Defendant argues that, before discovery may be had into its financial condition, Plaintiff must first make a prima facie showing that Defendant is liable for punitive damages. This argument misses the mark. Plaintiff's claim is for bad faith. If Defendant's adjustors have financial incentives to deny valid claims, information about those incentives is proof that Defendant acted in bad faith. In other words, the information is relevant toward liability, not just damages.

Defendant further argues that it has no incentive to deny Plaintiff's claim because the claim qualifies for reimbursement by the Michigan Catastrophic Claims Association (MCCA). However, Defendant concedes that "the MCCA might not reimburse all of the policy benefits paid by State Farm." And, as Plaintiff points out, "[i]nterest on payments made by an insurer, penalty interest, and attorney fees are not reimbursable by MCCA." Thus, the MCCA does not eliminate the possibility that Defendant's adjustors are motivated by improper financial incentives. Moreover, the information would be relevant even if the MCCA *did* fully reimburse Defendant, as that evidence would tend to *disprove* a fact of consequence, i.e., it would tend to disprove that Defendant acted in bad faith. *See Barten v. State Farm Mut. Auto. Ins.*, No. CV-12-00399-TUC, 2015 WL 11111475, at *2 (D. Ariz. June 10, 2015) ("The Court finds that the MCCA reimbursement goes to Defendant's motive *or lack thereof* to deny payment of attendant care services and is, therefore, relevant to the bad-faith claim." (emphasis added)).

## B. Temporal Scope

Plaintiff has limited the temporal scope of a few of his RFPs, but he generally seeks discovery of information from as far back as September 2015, when the first case settled. Defendant argues that this length of time is overbroad. According to Defendant, because the statute of limitation on Plaintiff's bad-faith claim is two years, Plaintiff should only be able to seek information from two years before this lawsuit was filed.

The Court disagrees that the statute of limitation should dictate the temporal scope of discovery. A party may seek discovery as to "events that occurred before an applicable

limitations period" when "the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). In a bad-faith case, information outside the limitation period can be relevant to provide context and possibly show a continuing pattern of bad-faith claims handling. *Cf. Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652 (D. Kan. 2006) (holding that "information from the two-years and three-months prior to the April 2002 liability period may be relevant to demonstrate the pattern and practice of discriminatory conduct alleged by Plaintiffs").

The Court disagrees with Plaintiff, however, that the discovery period should extend to September 2015. Instead, the Court finds that a period of three years before the liability period is proportional to the needs of this case (so a five-year period in total).[2] *See Anderson v. St. Paul Cos.*, Nos. CV 04-3236, CV 04-9392, 2006 WL 8434063, at *5 (C.D. Cal. Apr. 12, 2006) (examining cases that "suggest a presumptive five-year discovery period"). The Court is not persuaded by Plaintiff's argument that because Defendant has already produced some documents from September 2015, it has impliedly consented to produce all other types of information from that date onward as well.

## C.    Geographic Scope

Several of Plaintiff's RFPs seek information about financial incentives that apply companywide. The Court agrees with Plaintiff that, as to these requests, a regional limitation does not make sense: if a policy applies to every adjustor nationwide, then it applies to those who handled Plaintiff's claim, and it is relevant. Indeed, Defendant asserts that it has already "produced documents related to corporate wide programs/goals with respect to its Management Incentive Plan and Enterprise Incentive Plan . . . ."

A few of Plaintiff's RFPs also seek information specific to "the Zone, Section, Teams, and Units which encompass Arizona." Defendant objects to these RFPs on the ground that Plaintiff's policy is "handled by Michigan . . . adjustors" and that there is a "complete absence of Arizona related claims handling." In response, Plaintiff argues that "the claims handling standards applicable here are the Arizona standards," because the

---

[2]    To the extent that Plaintiff's RFPs specify a shorter period, or that Plaintiff agreed to a shorter period during the meet-and-confer process, the shorter period controls.

1    Court held in the previous case that "Arizona tort law of bad faith applies to State Farm's

2    dealing with [him]."

3         If Defendant has targets, goals, plans, measurements, or incentives that vary by

4    region, then the targets, goals, plans, measurements, or incentives that apply to those who

5    handled Plaintiff's claim are relevant and discoverable. However, it is not clear to the Court

6    that Arizona is the relevant region. If Plaintiff's claim arose in Michigan and is handled by

7    Michigan adjustors, and if Defendant has targets and goals that vary by region, then it

8    seems that the Michigan adjustors would be subject to the targets and goals applicable to

9    Michigan. On the other hand, it might be that any regionwide goals are based on the

10   insured's, and not the adjustors', location. The parties must meet and confer on this issue.

11        **D.    Form of Disclosure**

12        Several RFPs seek electronically stored information in "native" form. Defendant

13   objected on the ground that the federal rules permit it to produce information in a

14   "reasonably usable" form. To the extent Defendant's objections suggest that Defendant

15   alone can dictate the form of production, that is incorrect. The rule allows the requesting

16   party to specify the form of production, and the "reasonably usable" language applies only

17   if the "request does not specify a form" for production. Fed. R. Civ. P. 34(b)(2)(E)(ii). Of

18   course, the requesting party's specification does not necessarily govern either; if there is a

19   dispute that cannot be resolved through the meet-and-confer process, then the issue is for

20   the Court to resolve. Fed. R. Civ. P. 34 advisory committee notes to 2006 Amendment.

21        In any event, it appears that the issue has been resolved here. In his motion, Plaintiff

22   agreed "to limit his requests for native format to those items that are created in readily

23   available commercial products" (e.g., emails from Outlook must be produced in native

24   form). Defendant did not take issue with Plaintiff's suggestion in its response brief (or even

25   discuss the issue regarding form of production), so the Court presumes that Defendant

26   agrees with Plaintiff's proposal.

27   . . . .

28   . . . .

- 6 -

### E.       Boilerplate Objections

#### 1.       Vague and Ambiguous

Defendant objected to certain terms as "vague" and "ambiguous." Plaintiff asserts that the challenged terms are commonly used in the insurance industry, and Defendant has not disputed that assertion or otherwise explained the objections. Therefore, the objections are overruled.

#### 2.       Unduly Burdensome

Defendant objected to several RFPs on the ground that complying with them would be "unduly burdensome." Most of the undue-burden objections pertain to Plaintiff's requests for production of electronically stored information in "native" form. Specifically, Defendant objected that compliance would be unduly burdensome because native form is not reasonably accessible to it in the ordinary course of business. That objection was mooted because, as noted above, Plaintiff is now requesting native form only when it is easily accessible.

Two objections suggest that compliance would be an undue burden because the information sought (texts and other forms of instant communication) is "not captured by State Farm in its ordinary course of business." While "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost," it is that party's burden to "*show* that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B) (emphasis added). Defendant has not made that showing here. "Not captured in the ordinary course of business" does not necessarily mean that retrieving the data would require "undue burden or cost," and Defendant has not otherwise explained the objections. The objections are overruled.

The remainder of Defendant's undue-burden objections are based on relevance and proportionality. As explained in this Order, Plaintiff's requests are relevant. And, as limited by Plaintiff's concessions and by this Order, the Court finds that they are proportional. The objections are overruled.

### 3.      Privilege, Work Product, and Proprietary Information

In response to one RFP, Defendant provided a privilege log indicating that certain documents had been withheld on the ground that they were protected by attorney-client privilege or the work-product doctrine. Plaintiff does not challenge that assertion of privilege.

Defendant objected to other RFPs on the ground that, because they were overbroad, they "potential[ly]" sought information protected by attorney-client privilege or the work-product doctrine. Defendant objected to other RFPs "to the extent [they sought] confidential, proprietary business information." "[G]rounds for objection must be stated with specificity," and Defendant's assertions of potential protection are "too general to merit consideration." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)). In responding to the RFPs, Defendant may assert privilege or work-product doctrine as appropriate. Defendant may also seek a protective order if necessary. The Court does not address these objections further in this Order.

## II.      Plaintiff's RFPs

### A.      RFP Number 1

RFP Number 1 sought the "entire claim file(s), and any other files and documents maintained by any unit/office within State Farm, in their native formats, regarding Bryan Barten's claim for benefits under the automobile insurance policy under which Mr. Barten was an insured at the time of the accident that rendered him a quadriplegic." Defendant objected that (1) the RFP was overbroad, vague, ambiguous, and unduly burdensome to the extent it sought documents outside the "Claim File," as Defendant defines that term; (2) information outside the "Claim File" was irrelevant and disproportional to the needs of the case; and (3) the request for native form was disproportional to the needs of the case and unduly burdensome.

(1) Overruled. The RFP is not overbroad, vague, or ambiguous. Defendant has not adequately explained why compliance with the RFP would be unduly burdensome. (2)

Overruled. (3) Mooted.

### B.    RFP Number 2

RFP Number 2 sought "[a]ll documents in native format maintained by or in the possession or control or available to State Farm regarding Bryan Barten." Defendant objected that (1) the RFP was overbroad because (a) it used the term "all," (b) it was not limited to information relating to Plaintiff's claim, and (c) it was unrestricted in time; (2) the RFP sought information that was irrelevant and disproportional to the needs of the case; and (3) the request for native form was disproportional to the needs of the case and unduly burdensome.

(1)(a) and (b) Overruled. Defendant does not dispute that its relationship with Plaintiff relates exclusively to Plaintiff's claim for benefits. As such, the request for "all" documents concerning Plaintiff is not overbroad. (1)(c) Sustained. The RFP is temporally limited to the five years preceding this lawsuit (June 12, 2018). (2) Overruled. (3) Mooted.

### C.    RFP Numbers 3 and 4

RFP Number 3 sought "[c]ommunications, in native format, as it pertains to Bryan Barten, between and among employees (both current and former), agents, representatives, or assigns of State Farm, related to Bryan Barten." RFP Number 4 sought "[c]ommunications, in native format, to and from employees (both current and former), agents, representatives, or assigns of State Farm, and those outside State Farm, related to Bryan Barten." The RFPs specified several forms of communications sought (e.g., inter-office and intra-office memos/notes, emails, voicemails, text, and other forms of instant communication). Defendant objected that (1) the RFPs were overbroad because (a) they were not limited to communications relating to Plaintiff's claim, and (b) they were unrestricted in time; (2) the RFP sought information that was irrelevant and disproportional to the needs of the case; (3) the request for native form was disproportional to the needs of the case and unduly burdensome; and (4) the request to produce "text and other forms of instant communication," which are not captured in the ordinary course of business, was unduly burdensome.

(1)(a) Overruled. Defendant does not dispute that its relationship with Plaintiff relates exclusively to Plaintiff's claim for benefits. As such, the request is not overbroad. (1)(b) Sustained. The RFP is temporally limited to the five years preceding this lawsuit (June 12, 2018). (2) Overruled. (3) Mooted. (4) Overruled. Defendant has not adequately explained why compliance would be unduly burdensome.

### D.     RFP Numbers 12 and 13

RFP Number 12 sought "[n]otes, claim entries, management log entries, and communications from management at every level regarding Bryan Barten's insurance claim." RFP Number 13 sought "Claim Committee notes, reports, memos, [and] emails, regarding Bryan Barten's insurance claim." Defendant objected that the RFPs sought information that was irrelevant and disproportional to the needs of the case. These objections are overruled.

### E.     RFP Numbers 14 and 27

RFP Number 14 sought "[w]ritten communications from any Claims Consultants to management of claims adjusters regarding the handling of Personal Injury Protection/No-Fault medical claims for the past 5 years." RFP Number 27 sought "State Farm intra-company memos, emails, and other communications to and from State Farm employees regarding handling Personal Injury Protection/No-Fault medical claims from 2016 through 2022." Defendant objected that (1) the RFPs were overbroad because (a) they were not limited to information concerning Plaintiff's claim, (b) they were not limited to a reasonable period of time, and (c) they were unrestricted in geographic area; and (2) the RFPs sought information that was irrelevant and disproportional to the needs of the case, including information about other people's claims.

(1)(a) Mooted. Plaintiff has narrowed these RFPs to seek information related only to his claim. (1)(b) Overruled as to RFP 14; sustained as to RFP 27. The RFPs are temporally limited to the five years preceding this lawsuit (June 12, 2018). (1)(c) Mooted. (2) Overruled to the extent the RFP seeks information relating to Plaintiff; mooted to the extent it seeks information about other policyholders.

1

**F.     RFP Number 7**

2      RFP Number 7 sought "[d]ocuments setting forth the Business Plan, goals,

3 milestones, targets, and other economic performance measures/measurements for State

4 Farm from 2016 through the present." Defendant objected that (1) the terms "the Business

5 Plan," "goals," "milestones," "targets," and "other economic performance measures/

6 measurements" were vague and ambiguous; (2) the RFP was overbroad because (a) it was

7 not limited to information concerning Plaintiff's claim, (b) it was not limited to a

8 reasonable period of time, and (c) it was unrestricted in geographic area; and (3) the RFP

9 sought information that was irrelevant and disproportional to the needs of the case.

10      (1) Overruled. Defendant has not explained what is vague or ambiguous about the

11 disputed terms. (2)(a) Overruled. The RFP seeks information that applies companywide,

12 meaning it would apply to Plaintiff's claim. (2)(b) Mooted. Plaintiff has narrowed the

13 temporal scope to 2020 onward. (2)(c) Overruled. The RFP seeks information that applies

14 companywide, which makes a geographic restriction unnecessary. (3) Overruled.

15      **G.     RFP Numbers 15, 16, and 17**

16      RFP Number 15 sought "[t]he budgets, goals, financial targets, financial

17 measurements, and financial results, for the past 5 years for the claims departments for:

18 State Farm, its parent, and affiliated companies, and for the Zone, Section, Teams, and

19 Units which encompass Arizona." RFP Number 16 sought "[t]he combined ratio goals for

20 the past 5 years for the Zone, Section, Teams, and Units which encompass Arizona." RFP

21 Number 17 sought "[t]he actual combined ratio results for the past 5 years for the Zone,

22 Section, Teams, and Units which encompass Arizona." Defendant objected that (1) the

23 terms "goals," "financial targets," "financial measurements," "financial results,"

24 "combined ratio goals," and "combined ratio results" were vague and ambiguous; (2) the

25 RFPs were overbroad because (a) they were not limited to documents concerning

26 Plaintiff's claim or the personnel who handled Plaintiff's claim, and (b) they were not

27 limited to a reasonable period of time; and (3) the RFPs sought information that was

28 irrelevant and disproportional to the needs of the case.

(1) Overruled. Defendant has not explained what is vague or ambiguous about the disputed terms. (2)(a) Overruled in part to the extent that the information sought is relevant and proportional to the needs of the case. The parties must confer as to whether this RFP targets the appropriate personnel. (2)(b) Overruled. The five-year period is proportional to the needs of the case. (3) Overruled.

**H.     RFP Numbers 24 and 25**

RFP Number 24 sought "State Farm's severity goals for 2015 through 2023." RFP Number 25 sought "State Farm's reported severities for 2015 through 2023." Defendant objected that (1) the terms "severity goals" and "reported severities" were vague and ambiguous; (2) the RFPs were overbroad because (a) they were not limited to documents concerning Plaintiff's claim and to the personnel who handled Plaintiff's claim, (b) they were not limited to a reasonable period of time, and (c) they were unrestricted as to geographic area; and (3) the RFPs sought information that was irrelevant and disproportional to the needs of the case.

(1) Overruled. Defendant has not explained what is vague or ambiguous about the disputed terms. (2)(a) Overruled. The RFP seeks information that applies companywide, which means it would apply to Plaintiff's claim. (2)(b) Mooted. Plaintiff has narrowed the temporal scope to 2020 onward. (2)(c) Overruled. The RFP seeks information that applies companywide, which makes a geographic restriction unnecessary. (3) Overruled.

* * *

**IT IS ORDERED:**

1.     Plaintiff's motion to compel (Doc. 58) is **granted in part**.

2.     In accordance with the rulings in this Order, Defendant is ordered to search for and produce documents responsive to RFP Numbers 1–4, 7, 12–17, 24–25, and 27. Such production must be delivered to counsel for Plaintiff no later than 14 days from the date this Order is docketed.

3.     Because Plaintiff's motion is granted only in part, and because the parties have been conferring on the issues addressed in this Order, Plaintiff's request for fees is

denied. *See* Fed. R. Civ. P. 37(a)(5)(C).

Dated this 10th day of June, 2024.

Honorable Maria S. Aguilera
United States Magistrate Judge